JONES V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-310-CR

ERIC LYNN JONES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Eric Lynn Jones appeals his conviction for fraudulent use of identifying information.  In a single point, appellant complains that the trial court improperly denied his motion to suppress evidence.  We affirm.

At 3:30 a.m., Officers Charles Hall and Steven Smith stopped appellant for driving a van without a working headlight.  Appellant’s wife, Martha Rodriguez, was a passenger in the van.  After the stop, the deputies discovered that appellant did not have a valid driver’s licence, proof of insurance, or vehicle registration sticker, and that there was an open container of alcohol on the driver’s side of the van.  The deputies also discovered that Rodriguez did not have a valid driver’s license. 

Both appellant and Rodriguez appeared nervous, and they told the deputies that they were driving at 3:30 a.m. because traffic was lighter during this time.  They also gave conflicting answers to questions about the origins of their trip.  They stated that they were returning from visiting Rodriguez’s family in Fort Worth, but Rodriguez had said earlier that she did not have family in Fort Worth. 

The officers determined that the van was not stolen; however, through the van’s window Officer Hall observed car parts in the back of the van that did not appear to match the van.  Officer Hall was concerned that the parts could be stolen, and he asked appellant for permission to search the van.  Both officers testified that appellant orally consented to the search of the van and that Rodriguez also consented to a search of her purse.
(footnote: 2)  Officer Smith further testified that appellant’s consent was informed and voluntary and that Smith did not coerce appellant or use any type of duress or force to obtain the consent. 

During the search of the van, Officer Smith discovered a marijuana cigarette on the floor of the passenger side of the van.  The officers also found a “very realistic” looking toy pistol that appeared to be a BB gun and a bag containing a substance that Rodriguez claimed was rock salt, which was packaged as a controlled substance would be packaged for sale.  In addition, Officer Smith searched an unlocked silver briefcase that was behind the van’s front seats within both occupants’ reach.
(footnote: 3)  Officer Smith considered appellant’s consent to search the van to include consent to search the briefcase because it was in the van.  Further, after discovering the marijuana and the bagged substance, Officer Smith believed he had probable cause to search the van and its contents for controlled substances.  An initial search of the briefcase yielded a large amount of jewelry, a couple of two-way radios, a pair of handcuffs, and a hand-penciled sketch of a Texas inspection sticker. 

The officers noticed that the sketch of the inspection sticker matched the inspection sticker displayed on the van’s windshield, which was also a hand-drawn sketch rather than a valid sticker.  Consequently, appellant was placed under arrest for having no driver’s license or proof of insurance and for displaying a fictitious inspection certificate. 

The officers could not release the van to Rodriguez because she, too, lacked a valid driver’s license.  Therefore, they decided to impound the van. Following his arrest, appellant repeatedly asked that the briefcase be turned over to Rodriguez.
(footnote: 4)  The officers considered appellant’s repeated, insistent requests that the briefcase be turned over to Rodriguez suspicious, particularly in light of the items they had previously found there.  Officer Hall also explained that it was customary practice, before releasing property from a vehicle to a third party following an arrest, to thoroughly search the property to ensure that no illegal items are accidentally released and that all valuables are accounted for.  Therefore, Officer Smith conducted another search of the briefcase.  This search revealed two altered Texas identification cards and two altered social security cards for persons other than appellant or Rodriguez, and a blank check that did not belong to either of them.  Receipts and credit information found in appellant’s wallet and Rodriguez’s purse matched some of this information. 

As a result of these discoveries, appellant was indicted for the charged offense.  He filed a pretrial motion to suppress all of this evidence, as well as any oral or written statements he made following his arrest.  In his motion, appellant argued that the search of the van and briefcase were unlawful, that his arrest was unlawful, and that any post-arrest oral or written statements he made were fruits of the poisonous tree.  Following an evidentiary hearing, the trial court denied appellant’s motion to suppress.  Appellant was then convicted following a bench trial.  This appeal followed. 

In his sole issue on appeal, appellant complains that the trial court improperly denied his motion to suppress because a law enforcement official may not search a closed briefcase in a vehicle absent an exception to the warrant requirement, none of which is applicable in this case. 

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.
(footnote: 5) 
 In reviewing the trial court’s decision, we do not engage in our own factual review.
(footnote: 6) 
 The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 7) 
 Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
(footnote: 8)  
But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.
(footnote: 9) 

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.
(footnote: 10) 
 When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.
(footnote: 11)  We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.
(footnote: 12)  

The Fourth Amendment protects against unreasonable searches and seizures.
(footnote: 13)  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.
(footnote: 14) 
 A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.
(footnote: 15)  
Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.
(footnote: 16) 

Whether a search is reasonable is a question of law that we review de novo.
(footnote: 17)  Reasonableness is measured by examining the totality of the circumstances.
(footnote: 18)  It requires a balancing of the public interest and the individual’s right to be free from arbitrary detentions and intrusions.
(footnote: 19) 
 A search conducted without a warrant is per se unreasonable unless it falls within one of the “specifically defined and well-established” exceptions to the warrant requirement.
(footnote: 20)  Two of those exceptions are searches conducted pursuant to the suspect’s voluntary consent and searches incident to arrest.
(footnote: 21) 

For a consent search to be reasonable, the consent must have been voluntarily given and not the result of duress or coercion, either express or implied.
(footnote: 22)  
Whether consent was voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the statement of consent.
(footnote: 23) 
 The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence; the Texas Constitution requires proof by clear and convincing evidence.
(footnote: 24) 

Factors courts consider in determining voluntariness include the youth, education, and intelligence of the accused, the  constitutional advice given the accused, the length of the detention, the repetitiveness of the questioning, and whether physical punishment was used.
(footnote: 25) 
 Testimony by law enforcement officers that no coercion was involved in obtaining the consent is also evidence of the consent’s voluntary nature.
(footnote: 26) 
 Although a police officer’s failure to inform the accused that he can refuse consent is a factor to consider, the absence of such information does not automatically render the consent involuntary.
(footnote: 27)  Nor is consent rendered involuntary merely because the accused is under arrest.
(footnote: 28)  
Consent is not established, however, by showing no more than acquiescence to a claim of lawful authority.
(footnote: 29)
 The standard for measuring the 
scope
 of the suspect’s consent is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?
(footnote: 30) 
 The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer.
(footnote: 31)  In applying this standard, the federal courts of appeals have held that it is objectively reasonable for an officer to conclude that an individual’s general consent to the search of his vehicle includes the consent to search closed but unlocked containers found in the vehicle.
(footnote: 32) 

That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent.  It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity.  It is just as obvious that such evidence might be hidden in closed containers.  If the consent to the search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.
(footnote: 33)
Thus, if an officer makes a general request to search and the individual consents, knowing that there are unlocked containers in his vehicle, the individual should expressly limit his consent to the vehicle but not the containers, or, at the very least, he should object when the officer begins to open the container.
(footnote: 34)
 Once an officer has probable cause to arrest, he may search the passenger compartment of a vehicle, including any containers located therein, as a search incident to that arrest.
(footnote: 35) 
 
Probable cause for arrest exists when police have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense.
(footnote: 36) 
 It is irrelevant whether the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search.
(footnote: 37) 

In this case, the trial court did not make any explicit findings of historical fact; therefore, we must view the evidence in the light most favorable to the trial court’s rulings.
(footnote: 38) 

Regarding the issue of voluntariness, Officers Hall and Smith both testified that appellant consented to the search of his van.  Officer Smith further testified that appellant’s consent was informed and voluntary and that Smith did not coerce appellant or use any type of duress or force to obtain this consent.  Although appellant was not advised that he had the right to refuse consent, he was detained only about fifteen minutes before the officers requested consent to search,
(footnote: 39) the officers requested consent only once before it was given, they did not threaten appellant with any adverse consequences if he refused consent, brandish their weapons, or engage in any other show of force, and appellant was not under arrest when the request to search was made.  Under these circumstances, we hold that the trial court did not err by concluding that the State had proved by clear and convincing evidence that appellant’s consent to the search was voluntary.
(footnote: 40) 
 Although appellant testified that he never consented to the search of his van, the trial court was free to believe the officers’ testimony and disbelieve appellant’s.
(footnote: 41)
 Further, appellant’s general consent to the search of his van permitted the officers to open closed but unlocked containers that they found in the van.
(footnote: 42)  Although appellant testified that the briefcase was locked on one side and that Officer Smith had to break the lock to open the case, the trial court was, once again, free to believe Officer Smith’s testimony that the briefcase was not locked and to disbelieve appellant’s testimony.
(footnote: 43)  Finally, once the officers had probable cause to arrest appellant for having an invalid driver’s license, no proof of insurance, and for displaying a fictitious inspection sticker, the officers were authorized to re-search the briefcase as a search incident to arrest.
(footnote: 44)
 Accordingly, for all of these reasons, we hold that the trial court did not abuse its discretion by denying appellant’s motion to suppress.  We overrule appellant’s issue and affirm the trial court’s judgment.

PER CURIAM

PANEL F: CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 22, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
There is conflicting testimony concerning whether appellant consented to the search of the van.  Appellant did not sign a written consent, and he testified that he did not orally consent to the search. 

3:
Appellant testified that the briefcase was locked on one side and that Officer Smith had to break the lock in order to search it.  

4:
Appellant testified that he also asked that a leather jacket be turned over to Rodriguez.  Officer Smith did not remember the request regarding the coat. 

5:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 

6:
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). 

7:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

8:
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).

9:
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

10:
Estrada
, 154 S.W.3d at 607
.

11:
Id
.

12:
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

13:
U.S. 
Const
. amend. IV.

14:
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

15:
Id
.

16:
Id
.

17:
Kothe v. State
, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

18:
Id
. at 63.

19:
Id
.

20:
McGee v. State
, 105 S.W.3d 609, 615 (Tex. Crim. App.), 
cert. denied
, 540 U.S. 1004 (2003); 
see
 
Best
, 118 S.W.3d at 862.

21:
McGee,
 105 S.W.3d at 615.

22:
Reasor v. State,
 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000)
.

23:
Maxwell v. State,
 
73 S.W.3d 278, 281 (Tex. Crim. App.), 
cert. denied,
 537 U.S. 1051 (2002)
; 
Reasor,
 12 S.W.3d 
at 818.

24:
Maxwell,
 
73 S.W.3d at 281
.

25:
Reasor,
 12 S.W.3d 
at 818.
 

26:
Martinez v. State,
 
17 S.W.3d 677, 683 (Tex. Crim. App. 2000)
.

27:
Johnson,
 
68 S.W.3d at 653.

28:
Id.

29:
See Carmouche,
 10 S.W.3d at 331 (
citing Bumper v. N.C.,
 391 U.S. 543, 548-50, 88 S. Ct. 1788, 1792 (1968) (holding consent involuntary where officer falsely represented he had a valid search warrant)).

30:
Florida v. Jimeno,
 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04 (1991); 
United States v. Mendoza-Gonzalez,
 318 F.3d 663, 667 (5th Cir.), 
cert. denied,
 538 U.S. 1049 (2003).

31:
Mendoza-Gonzalez,
 318 F.3d at 667
; 
Wayne R. LaFave, Search & Seizure
 § 8.1(c), at 19 (4th ed. 2004).

32:
See Mendoza-Gonzalez,
 318 F.3d at 667 (holding that consent to “take a look” inside accused’s truck included consent to search boxes found in truck); 
United States v. Snow,
 44 F.3d 133, 134-35 (2nd Cir. 1995) (holding that consent to search car included consent to search duffel bag found in back seat and bag jammed under seat); 
United States v. Zapata,
 18 F.3d 971, 977-78 (1st Cir. 1994) (holding that consent to search car included consent to search duffel bags found in trunk); 
see generally,
 
LaFave, Search & Seizure
 § 8.1(c), at 24-26
.

33:
Snow,
 44 F.3d at 135.

34:
Mendoza-Gonzalez,
 318 F.3d at 667.

35:
New York v. Belton,
 453 U.S. 454, 460-61, 101 S. Ct. 2860, 2864 (1981); 
Ballard,
 987 S.W.2d at 892; 
see McGee,
 105 S.W.3d at 615 (holding that search incident to arrest permits search of areas within defendant’s immediate control).

36:
McGee,
 105 S.W.3d at 614; 
see also
 
Tex. Code Crim. Proc. Ann.
 art. 14.01(b) (Vernon 2005) (providing that a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view).

37:
Ballard,
 987 S.W.2d at 892.

38:
Estrada,
 154 S.W.3d at 607.

39:
During this time, the officers checked the validity of appellant’s driver’s license, proof of insurance, and registration sticker, determined that the van was not stolen, questioned appellant and Rodriguez about the purpose for their trip, and tried to decide what to do with the van, since neither appellant nor Rodriguez had a valid driver’s license. 

40:
See Maxwell,
 73 S.W.3d at 281; 
Reasor,
 12 S.W.3d at 818. 

41:
See Ross,
 32 S.W.3d at 855; 
Ballard,
 987 S.W.2d at 891.

42:
See Mendoza-Gonzalez,
 318 F.3d at 667 (holding that consent to search inside trailer of commercial vehicle properly extended to box in trailer that “could be easily opened by removing or cutting through a single piece of tape,” where police did not damage box or its contents).

43:
See Ross,
 32 S.W.3d at 855; 
Ballard,
 987 S.W.2d at 891.

44:
See Belton,
 453 U.S. at 460-61, 101 S. Ct. at 2864; 
Ballard,
 987 S.W.2d at 892; 
see also State v. Gray,
 158 S.W.3d 465, 470 (Tex. Crim. App. 2005) (holding that, incident to a lawful arrest, an officer may search the accused’s person, the passenger compartment of his vehicle, and the containers in it)
; Williams v. State,
 726 S.W.2d 99, 101 (Tex. Crim. App. 1986) (holding that an officer’s search of a closed sack in a truck after probable cause to arrest existed was a valid search incident to arrest).